UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK T. WARD,

            Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

            Defendant.

CASE NO. C16-1977-MJP-BAT

**REPORT AND RECOMMENDATION**

Mark T. Ward, who uses the name Alex Monroe Ward,[1] seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications for the period before September 1, 2014. She contends the ALJ erred by misevaluating the medical evidence, the lay witness evidence, and her testimony, and by making a residual functional capacity finding unsupported by substantial evidence. Dkt. 11. The Court recommends that the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1] Ms. Ward testified at the April 1, 2014 hearing that she had formally changed her name to Alex Monroe Ward, Tr. 69-70, but the record does not contain documentation of a formal name change. Although the Court will leave the caption of this case unchanged, it will use Ms. Ward's preferred name and pronouns henceforth.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Ms. Ward was 39 years old on the alleged onset date and 50 years old on the date of the ALJ's decision. Tr. 293. The ALJ applied the age categories non-mechanically and found that she moved to the closely approaching advanced age category on September 1, 2014. Tr. 25-26. Ms. Ward has completed one year of college and has worked as an employment clerk and a general clerk. Tr. 99, 337.

Ms. Ward applied for benefits in 2009, alleging disability as of January 1, 2005. Tr. 293, 295. Ms. Ward's date last insured for purposes of Disability Insurance Benefits is December 31, 2006. Tr. 21. After her applications were denied initially and on reconsideration, the ALJ held a hearing on October 21, 2011, and issued a decision on January 27, 2012, finding Ms. Ward not disabled. Tr. 113-23. Ms. Ward sought review, and the Appeals Council remanded the case for a supplemental hearing. 131-32. The ALJ held a second hearing on April 21, 2014, and issued a decision on June 23, 2015, finding Ms. Ward disabled as of September 1, 2014, but not disabled prior to that date. Tr. 18-28. The Appeals Council denied Ms. Ward's request for review, making the ALJ's June 2015 decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found that Ms. Ward had not engaged in substantial gainful activity since the alleged onset date; she had the following severe impairments: peripheral neuropathy in the lower extremities, secondary effects of HIV, pulmonary hypertension, and secondary effects of gender identity disorder; and that these impairments did not meet or equal the requirements of a listed impairment.[3] Tr. 21-22. The ALJ

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

found that Ms. Ward had the residual functional capacity to perform sedentary work with the following additional limitations: she could perform unskilled, repetitive, routine work with no public contact, except for incidental contact; she could have occasional contact with supervisors and co-workers; she would be off task at work 15% of the time, but still meet minimum production requirements of the job; she would be absent from work one time every four months; and she must elevate her feet at work to a height of one foot off the floor. Tr. 23. The ALJ found that since her alleged onset date, Ms. Ward was unable to perform any past relevant work. Tr. 25. The ALJ found that before September 1, 2014, there were jobs that existed in significant numbers in the national economy that Ms. Ward could perform, but after that date, when her age category changed, there were not. Tr. 26-27. The ALJ therefore found that Ms. Ward was not disabled before September 1, 2014, but she became disabled on that date. Tr. 27-28.

## DISCUSSION

### A. Medical evidence

Ms. Ward argues that the ALJ erred by rejecting the opinions of the treating and examining providers without providing adequate explanations. Dkt. 11 at 4. The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

*1. Dr. Almaraz*

Neurologist Lewis Almaraz, M.D., examined Ms. Ward in December 2011. Tr. 922. He opined that Ms. Ward had peripheral sensory motor neuropathy related to her HIV and treatment for it, that this condition was likely to progress with time, and that there was no effective

treatment other than the symptomatic treatment she was then receiving. Tr. 925. Dr. Almaraz opined that most of her limitations were related to her pulmonary hypertension, but her neurological condition affected her gait and ability to be on her feet, with "difficulty coordinating movements of the lower extremities" and "some imbalance." *Id.* He opined that Ms. Ward could lift and carry up to 10 pounds, could sit for 4 hours in an 8-hour work day and stand and walk for 1 hour in an 8-hour work day, could reach with her hands occasionally, and had other postural and environmental limitations. Tr. 927-31.

In the January 2012 decision, the ALJ gave Dr. Almaraz's opinion significant weight, finding that it was generally consistent with the RFC finding of less than the full range of sedentary work in that decision. Tr. 119. However, the ALJ did not adopt Dr. Almaraz's more restrictive opinions, finding that Dr. Almaraz had based his opinions on balancing problems without acknowledging Ms. Ward's drug use. Tr. 119. The ALJ concluded Ms. Ward's physical functioning would have been higher without the effects of methamphetamine, which she testified she had last used some time after Dr. Almaraz's examination. *Id.*

In the June 2015 decision, the ALJ gave Dr. Almaraz's opinion little weight for "the reasons set forth in the prior decision" and because Dr. Almaraz relied on Ms. Ward's subjective statements, which the ALJ found not entirely credible. Tr. 25. The ALJ also found that Dr. Almaraz did not provide significant support or basis for his suggestions of severe limitations that would prevent Ms. Ward from performing even sedentary work, and that Dr. Almaraz's opinion was "inconsistent with the minimal physical examinations findings described above." Tr. 25.

The ALJ thus gave the opinion little weight for the same reasons he previously gave it significant weight. The ALJ stated at the beginning of the June 2015 decision that he incorporated the January 2012 decision "to the extent it is not inconsistent with" the June 2015

decision. Tr. 18. But by giving Dr. Almaraz's opinion little weight for the same reasons he previously gave it significant weight, the ALJ created an inherent inconsistency. And the boilerplate statement about incorporating the previous decision cannot reconcile this inconsistency without further explanation. This inconsistency undermines the ALJ's decision to give Dr. Almaraz's opinion little weight.

The additional reasons the ALJ gave also do not withstand scrutiny. The ALJ noted that Dr. Almaraz relied on Ms. Ward's subjective statements. Tr. 25. But an ALJ does not provide adequate reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Almaraz took a history and considered Ms. Ward's statements. But he also reviewed treatment records and performed a complete neurological examination. There is nothing in the opinion to indicate that Dr. Almaraz discredited Ms. Ward's complaints or that he relied on those complaints to the exclusion of his own observations and professional expertise. This was not a valid reason to reject Dr. Almaraz's opinion.

The ALJ also found that Dr. Almaraz did not provide "significant support or basis" for the severe limitations he opined and that Dr. Almaraz's opinion was "inconsistent with the minimal physical examination findings described above." Tr. 25. A general statement that an opinion is not supported by sufficient objective findings does not rise to the level required to reject a treating or examining doctor's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the

REPORT AND RECOMMENDATION - 5

objective factors are listed seriatim."). These boilerplate, conclusory statements, without more, are not sufficient to reject Dr. Almaraz's opinion.

The ALJ gave invalid and inherently inconsistent reasons for rejecting Dr. Almaraz's opinion, and thus erred in rejecting the opinion.

### 2. Dr. Shereen

Treating doctor Tina Shereen, M.D., in a letter cosigned by treating nurse practitioner Katie Hester, ARNP, opined in April 2014 that Ms. Ward would be unable to stand for two hours or sit for six hours in a workday due to her neuropathy and pulmonary hypertension. She opined that the side effects of Ms. Ward's prescribed pain medication would further limit her ability to maintain a fulltime schedule performing any kind of work, and noted that Ms. Ward had been advised to elevate her legs above chest. Tr. 1001. Dr. Shereen stated that while Ms. Ward has a history of substance abuse, there have been no signs of this for several years and she did not believe that substance abuse contributed to Ms. Ward's physical limitations. *Id.*

The ALJ gave this opinion little weight, finding that the statement that Ms. Ward had been advised to elevate her legs above chest height was inconsistent with the treatment notes, which the ALJ found only suggested she had been advised to elevate her feet on only two occasions—in June 2011 and June 2012, when she had swelling in her lower extremities—and stating that the earlier opinion indicated she needed to elevate her feet above her heart only at night. Tr. 25. But the ALJ contradicted his own finding by citing to an October 2011 opinion from treating physician's assistant Dianne Tufel, PA-C, which states that Ms. Ward must elevate her feet five times during daytime hours and above her heart at night. Tr. 916. This contradiction undermines this reason for rejecting the treating doctor's opinion, leaving it unsupported by substantial evidence.

REPORT AND RECOMMENDATION - 6

The ALJ also found that Dr. Shereen's opinion was "inconsistent with the minimal and mild physical examination findings discussed above." Tr. 25. As with the ALJ's use of this boilerplate language to reject Dr. Almaraz's opinion, this reason does not rise to the level required to reject a treating doctor's opinion. *Embrey*, 849 F.2d at 421-22. In addition, the Court notes that the standing and sitting limitations Dr. Shereen opined are consistent with those opined by Dr. Almaraz, making it even less clear which findings the ALJ was referring to.

The ALJ failed to give specific and legitimate reasons for rejecting Dr. Shereen's opinion and thus erred in rejecting the opinion.

  *3. PA Tufel*

Treating physician's assistant Dianne Tufel, PA-C, opined in October 2011 that Ms. Ward would not be able to perform even sedentary work due to severe peripheral neuropathy and pulmonary hypertension, and would be unable to sustain full time employment. Tr. 916-19.

In the January 2012 decision, the ALJ found that this conclusion was unsupported by the record, citing to treatment notes in which PA Tufel documented medical improvement. Tr. 119-20. The ALJ also found that PA Tufel did not mention Ms. Ward's drug use and it was not shown that she considered its effects in forming her opinion. Tr. 120. And the ALJ found that despite her failure to mention drug use, Ms. Tufel's opinion rating Ms. Ward's RFC as "less than sedentary" was consistent with the RFC finding in that decision. *Id.* The ALJ therefore gave PA Tufel's opinion very little weight. *Id.* The ALJ noted that an unidentified medical doctor had cosigned PA Tufel's opinion, but concluded that PA Tufel was the primary author and her entries in the treatment record did not support her conclusion that Ms. Ward could not work. *Id.*

In the June 2015 decision, the ALJ gave little weight to PA Tufel's opinion, which the ALJ characterized as "the opinions of the claimant's treating providers from the Country Doctor

Community Clinic," for the reasons in the prior decision and because the suggestions of severe limitations were inconsistent with the minimal examination findings. Tr. 25.

A physician's assistant is not an acceptable medical source and therefore cannot give medical opinions.[4] *See* 20 C.F.R. § 404.1513(a). The ALJ may evaluate opinions of other medical sources using the same factors used to evaluate medical opinions of acceptable medical sources. Social Security Ruling 06-03p; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of non-acceptable medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ must give specific, germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In finding that PA Tufel's opinion was unsupported by the record, the ALJ cited to five treatment notes from 10 years of primary care treatment, while ignoring all notes that show significant impairments. This selective citing to the record does not provide substantial evidence to support this reason for rejecting the opinion.

In finding it unclear whether PA Tufel had considered the effects of Ms. Ward's drug use, the ALJ found that Ms. Ward had given contradictory statements about her drug use to other providers and that PA Tufel did not mention drug use in her report, but her opinion was nevertheless consistent with the ALJ's RFC finding. Tr. 120. It is unclear how the fact that PA Tufel's opinion is consistent with the ALJ's RFC finding undermines her opinion. This was not a germane reason to reject her opinion.

---

[4] Although physician's assistants are now considered acceptable medical sources, the new rule applies only to cases with a filing date on or after March 27, 2017. *See* POMS DI 22505.003 (March 24, 2017).

REPORT AND RECOMMENDATION - 8

And the ALJ's boilerplate statement in the June 2015 decision that PA Tufel's opinion was inconsistent with the minimal physical examination findings is not specific and does not meet the standard required to reject the opinion of a treating provider. *See Embrey*, 849 F.2d at 421-22. It is also unclear from the ALJ's characterization of the opinion in the June 2015 decision as being from multiple providers if the ALJ considered the opinion as one from a non-acceptable medical source or from an acceptable and non-acceptable medical source together.

The ALJ failed to give valid reasons for rejecting this opinion and thus erred in doing so.

**B.     Lay witness evidence**

Ms. Ward argues that the ALJ failed to adequately address the lay witness evidence from his partner, David Van Blyenburgh. Dkt. 11 at 13. Mr. Van Blyenburgh completed a third-party form in December 2010, stating that Ms. Ward's feet hurt all the time, she had a low CD4 count[5] and was recently hospitalized for pneumonia, which was hard on her immune system, she could not lift over 5 pounds, bending and other postural movements hurt her, she could stand for only 15 minutes at a time, and she sometimes had memory loss and difficulty concentrating. Tr. 400-07.

The ALJ failed to discuss Mr. Van Blyenburgh's statements in the June 2015 decision, but gave it limited weight in the January 2012 decision. In that decision, the ALJ found that Mr. Van Blyenburgh's statement that Ms. Ward could walk for only 15 minutes before having to stop and rest was inconsistent with Ms. Ward's statement a month later that she walked her dog once a day. Tr. 120. But Ms. Ward stated only that she walked her dog, not how long she does so or

---

[5] A CD4 count is a measure of a person's white blood cells. A normal CD4 cell count is between 500 and 1500; a person whose CD4 cell count drops below 200 is at high risk of developing serious illnesses. *See* http://www.aidsmap.com/CD4-cell-counts/page/1044596/ (last visited October 5, 2017).

whether she rests during the walks. Tr. 378. In fact, Ms. Ward stated in that very same form that she could walk for 10 minutes before she had to stop and rest, a statement largely consistent with Mr. Van Blyenburgh's statement. Tr. 379. There was no inherent inconsistency between these statements.

The ALJ also found that Mr. Van Blyenburgh's statement that Ms. Ward's CD4 count was low was inconsistent with a state-agency consultant's note a month later that Ms. Ward had an undetectable viral load and CD4 count of 756. Tr. 120. But the report the state agency consultant cited to was from January 2010. Tr. 625. This was nearly a year before Mr. Van Blyenburgh's December 2010 statement, and well before Ms. Ward's hospitalization for pneumonia, which Mr. Van Blyenburgh indicated was hard on her immune system. This error undermines the factual basis for the ALJ's finding that Mr. Van Blyenburgh's statement was inconsistent with this evidence.

And the ALJ found that Mr. Van Blyenburgh did not mention Ms. Ward's history of drug use, although her reported clean and sober date was after the time of Mr. Van Blyenburgh's report. Tr. 120. The third-party function report form asked Mr. Van Blyenburgh only to describe his observations of Ms. Ward and her functioning. It contained no questions on drug use, and does not ask him to opine as to the cause of the limitations he observed, whether that was Ms. Ward's impairments, her history of drug use, or something else. Mr. Van Blyenburgh's failure to mention Ms. Ward's history of drug use was not a germane reason to reject his statement.

The ALJ failed to give specific, germane reasons for rejecting Mr. Van Blyenburgh's statement and therefore erred in giving it limited weight.

### C. Ms. Ward's credibility

Ms. Ward argues that the ALJ erred in finding her not fully credible. Dkt. 11 at 15. The ALJ did not find that Ms. Ward was malingering. Thus, the ALJ had to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found that Ms. Ward's activities were inconsistent with her allegations of severely limiting symptoms. Tr. 24. The ALJ noted that Ms. Ward testified that she had lived with a friend for the past nine months, she did not normally prepare her own meals, but did some cleaning and performed her own personal care, and she did her laundry on a good day. *Id.* The also ALJ noted that Ms. Ward described traveling to Georgia in 2013 and that she was able to sit on the airplane for the flights although it was uncomfortable. *Id.*

The ALJ merely described the activities Ms. Ward testified to. The ALJ did not connect these activities to Ms. Ward's symptom testimony or explain how these activities undermined her allegations. The ALJ may not penalize a claimant for attempting to live a normal life in the face of her limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). All the ALJ has done here is describe Ms. Ward's attempts to do just that. Without more, this description is not a clear and convincing reason to undermine her allegations.

The ALJ also found that the minimal and mild physical examination findings were inconsistent with her allegations of severely limiting pain. Tr. 24. The ALJ cited to Dr. Almaraz's findings of normal muscle tone and bulk, and 5/5 strength in all of her extremities,

despite some increased sensitivity and decreased sensation in her lower extremities. Tr. 925. The ALJ ignores Dr. Almaraz's abnormal findings, including difficulty coordinating movements of the lower extremities and some imbalance, does not explain how normal muscle tone and strength is inconsistent with allegations of pain, and relies on a doctor he later discounts to reject Ms. Ward's statements. This was not a clear and convincing reason to reject her testimony.

The ALJ also found that Ms. Ward's treating providers only occasionally noted decreased sensation or edema on physical examination and other examinations demonstrated little to no abnormalities, including a lack of observation of edema or sensory deficits. Tr. 24. But, again, the ALJ cited to notes that do not document edema or sensory deficits but ignored those that did, which occurred regularly and to varying degrees. And the ALJ cited to at least one treatment note that documented decreased sensation bilaterally in her feet and vibratory sensation absent in portions of both feet, Tr. 872, as an example of a note with no observation of abnormalities. This was not a clear and convincing reason to reject Ms. Ward's testimony.

The ALJ noted that Ms. Ward experienced lower extremity swelling when she engaged in activities that were more demanding than the ALJ's RFC finding. Tr. 24. The ALJ noted one report from June 2011 finding bilateral peripheral edema in her lower extremities after working in the garden and being on her feet more than usual. Tr. 861. The ALJ fails to explain how this finding undermines, rather than supports, Ms. Ward's subjective testimony. This was not a clear and convincing reason to reject her testimony.

The ALJ failed to give clear and convincing reasons to reject Ms. Ward's testimony and thus erred in doing so.

**D.     RFC finding**

Ms. Ward argues that the ALJ's residual functional capacity finding is unsupported by substantial evidence because it includes limitations with no basis in the evidence—including the finding that Ms. Ward would be off task 15% of the time, absent from work once every four months, and would need to elevate her feet to a height of one foot off the floor—and because it fails to incorporate the opinions the ALJ erroneously rejected. Dkt. 11 at 14-15.

A residual functional capacity finding must include all of a claimant's limitations that are supported by substantial evidence. *See Thomas*, 278 F.3d at 956. As the ALJ erroneously rejected the opinions of Dr. Almaraz, Dr. Shereen, and PA Tufel, the lay witness evidence of Mr. Van Blyenburgh, and Ms. Ward's subjective symptom testimony, it does not meet this requirement.

The Commissioner argues that there is no requirement for the RFC finding to directly correspond to a specific medical opinion and that the ALJ therefore did not err in including the limitations Ms. Ward identifies. Dkt. 12 at 2. But the erroneously rejected evidence supports limitations greater than those the ALJ included in the RFC finding, making the ALJ's finding of lesser limitations unsupported by substantial evidence and therefore erroneous.

**E.     Remand for further proceedings**

Ms. Ward asks the Court to direct an award of benefits. Dkt. 11 at 18. When a district court reverses an ALJ decision, it has discretion either to remand the case for further administrative proceedings or to remand for an award of benefits. 42 U.S.C. § 405(g); *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000). In the typical case, where outstanding issues must be resolved and it is not clear from the record that an ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand for further proceedings is

appropriate. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). The Court finds that this case does not present the rare circumstance that calls for an immediate award of benefits and recommends that remand for further proceedings is the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the opinions of Dr. Almaraz, Dr. Shereen, and PA Tufel, the evidence from Mr. Van Blyenburgh, and Ms. Ward's subjective symptom testimony. The ALJ should further develop the record, reevaluate the evidence, and redo the five-step disability evaluation as the ALJ deems necessary and appropriate.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **October 19, 2017**. If no objections are filed, the Clerk shall note the matter as ready for the Court's consideration on that day. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 5th day of October, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge